Concurring Opinion.
Watkins, J.
From the record'it appeai’3 that the plaintiff executed an act of mortgage upon her separate property to secure the payment of her note for one thousand five hundred dollars in favor of Mrs. Catherine Stouff, on the 20th of January, 1874, and that the said indebtedness -was that of her husband — the judge’s certificate of authorization being appended to the act.
Shortly afterward Mrs. Stouff assigned the note to Mrs. Caroline Brownson, mother of the plaintiff’s husband, and she foreclosed the mortgage and purchased the property on the 5th of September, 1875, and conveyed it to the defendant on the 24th of September, 1880.
The grounds of nullity assigned by the plaintiff are, (1) that the mortgage was granted to secure the indebtedness of the husband; (2) that it was secured and maintained through the marital influence of her husband.
The judge held that the defendant was a purchaser in good faith; but that inasmuch as no prescription runs between husband and wife, it did not begin to run until after the death of plaintiff’s husband in the year 1887; and, consequently, the period of time necessary to found defendant’s title by prescription acquirendi causa (R. C. C., 3478) had not elapsed at date suit was filed. R. C. C., 503.
But he gave effect to the defendant’s plea of five years’ prescription liberandi causa (R. C. C., 3542), which declares that an action for “ the nullity or rescission of contracts, testaments, or other acts,” “ are prescribed by five years.” (Our italics.)
There is no question about the regularity of the executory proceedings and judicial sale to Mrs. Brownson, the only claim that the plaintiff makes in reference thereto being that she made it under the false representation that it was to protect the property from other creditors of the husband of plaintiff.
*1054 On this state of the case there is but a single question presented for solution, and that is whether plaintiff’s action to annul the act of mortgage is barred by the five years’ prescription librandi causa.
Her suit is intended to procure her release from the effect of her promise to pay her husband’s debt, and to procure the revocation of the act of mortgage she consented as a security therefor.
Her theory is that the nullity of those acts being absolute, it draws to them the nullity of the subsequent acts of sale, judicial and conventional.
The Code declares that “ the wife * * * can not bind herself for her hu3band * * * for debts contracted by him before, or during the marriage.” R. C. C. 2398.
It is on the prohibition which that article contains that plaintiff mainly relies, and the success of her pretensions necessarily turns upon the character of the nullity therein denounced — whether absolute or relative.
For, if absolute, the argument is that the nullity is incurable; not subject of ratification or prescription. While, qn the other hand, it is that, if relative only, the converse of that proposition is true, in every particular. That, if absolutely null, it was so ab initio, and never produced any legal results. That prescription can not create a right nor make an obligation.
Plaintiff’s contention is that the mortgage was an absolute nullity, and that its nullity permeates and renders void the subsequent transactions.”
But her further contention is, that if the act be only relatively null, the prescription of ten years, prescribed in R. C. C. 2221, controls, instead of that of five years, as prescribed in R. C. C. 3542 (3547).
The case of Lafitte vs. Delogny, 33 An. 659, presents conditions quite similar to those presented in this case, and involved the nullity of an act of mortgage by a wife given to secure a debt of her husband, and subsequent foreclosure and sale of the property mortgaged, the same having been ratified by the surviving widow after the demise of her husband, in a written act of ratification, “ and by her silent acquiescence in the proceedings and sale she again ratified the contract on which they were based.”
On this hypothesis the court propounds this question, viz.:
“ Admitting that the debt originally was the debt of her husband, *1055 which she thus ratified and promised to pay, did such ratification create any legal obligation on her part, and make the debt a valid debt against her from the time it was made?
“In other words, was the mortgage given by her for the debt of the husband — conceding it to be such — a nullity so absolute and radical as could not be ratified by her after the death of her husband, and she was thus freed from marital influence?”
The same question confronts us here, although the ratification of the wife’s prohibited contract rests alone upon “her silent acquiescence in the proceedings and sale.”
In making reply to that query, the court held and maintained the principle that under our law, as under the French law and jurisprudence, there are two distinct and different kinds of absolute nullities in matters of contract; (1) those resting upon motives which are violative of good morals or public policy; (2) those resulting from the incapacity of persons to enter into contracts of any kind.
Of the former they say it is a nulliiy, “so absolute and radical that the law always and constantly resists it, and makes and declares it non-existent, and not susceptible of ratification; ” and of the latter they say that, though dormant and non-enforeible during the continuance of the incapacity, yet same may become the subject of ratification, after the incapacitated person has been relieved of her disability. Vide Dunod Traite de Prescrip., Ch. 8, p. 47; Toulier, Vol. 4, p. 533; Vaughan vs. Christine, 3 An. 328, quoted in Lafitte vs. Delogny.
The court, in applying those principles to the facts of that case, say:
“The nullity charged respecting the act of mortgage executed by Mrs. Delogny in favor of her son in this case, may be classed among the nullities which result from the incapacity of the wife growing out of the relation she bears to her husband;” and “icis evident that when the law declares that the wife can not bind herself for her husband, or become security for his debts, this was to protect her against acts resulting from her dependence on her husband.”
The reason assigned for this rule of law is, that it operates a protection to the wife’s separate property.
This dual principle is fully recognized and sanctioned by our Code. For while, in Art. 11, it is declared that “individuals can not, by their com entions, derogate from the force of laws made for the. *1056 preservation of public order and good morals;” and in Art. 12 it is declared that “ whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed;” yet, it is further declared in Art. 1790, that “ besides the general incapacity which persons of certain descriptions are under, there are others applicable only to certain contracts, either in relation to the parties, such as husband and wife, tutor and ward, whose contracts with each other are forbidden; or in relation to the subject of the contract, such as purchases by the administrator of any part of the estate which is committed to his charge, and the incapacity of the wife, even with the assent of the husband to alienate her dotal property, ,or to become security for his debts.”
Special significance attaches to this article in view of the fact that it is found in the chapter of the title “ of Conventional Obligations ” which treats of the parties to a contract and their incapacity to contract. ,
Reading those two articles together, the conclusion is clear that the court correctly held the nullity in the contract of Mrs. Delogny to be one which resulted from her incapacity as a wife; and it is equally evident that the prohibition of Art. 2398 is not one which comes within the purview of Art. 11, and hence an engagement in violation of it does not result in an absolute nullity which derogates from the force of laws made for the preservation of public order or good morals.
The court in that case say that the contract of the wife in such case “ may be assimilated to other contracts which the wife is forbidden to enter into.” Citing Art. 2397, and making the following comment, viz.: “ They ” — Arts. 2397 and 2398 — “ seem to stand on the same footing; and, it is worthy of note that Art. 2397 forbidding the wife to sell her'immovables, and Art. 2398, containing the prohibition against her binding herself for her husband’s debts, constitute of themselves one section, and Is entitled ‘ of the wife’s incapacity to alienate her- immovables, or to bind herself for her husband,’ and therefrom draw the inference that the two are of the same general character * * * Now, it will hardly be questioned that a married woman who sells her immovables without the authority of her husband can ratify such sale after the dissolution of the marriage, yet the same terms of prohibition are used in both articles.”
*1057 In confirmation of this theory, Art. 1786 — which is found in the same section of the Code as 1790 supra — declares that “ the unauthorized contracts made by a married woman, like the acts of minors, may be made valid after the marriage is dissolved, either by express or implied ratification.”
The principles on which the opinion in the Delogny case is predicated are sanctioned and supported by numerous prior adjudications of this court. In fact, I have not been able to find any well considered case holding that such prohibited contract of a wife was not susceptible of tacit ratification after she is released from the restraints of marital authority.
As the decisions on this and kindred questions cover a wide range, and embrace a variety of judicial opinions, I will only make a few quotations from those best expressing the jurisprudence of this court in the premises.
In The Augusta Insurance and Banking Company vs. Morton, 3 An. 417, the court, speaking through Bustis, C. J., said:
“ The article of the Code which provides “ that the wife can not bind herself for the debts of her husband, according to the doctrine of the civilians, is a personal statute. It is founded exclusively on the personal relation between the husband and wife, resulting from marriage under our laws, and, of course, is confined in its opetation to married persons within our jurisdiction.
“ True, it establishes an incapacity to contract, but this incapacity is merely relative, and it is settled by our jurisprudence that a wife can not be relieved from the effect of a contract by which she became the surety for her husband, if the debt itself inured to her benefit. The disability to contract exists only in a certain contingency, and that contingency is strictly personal. The incapacity of a married woman to contract is of the same character as that of a minor, and the laws creating those incapacities have always been classed among those which are called personal.
❖ !¡< * * * 'Jfi Sf!
“This article, R. C. C. 2398 (2412) * * * renders voidable contracts made by married women in certain cases, by reason of the consideration which it holds to be in conflict with the relations of husband and wife.” Citing: 1 Duranton, Secs. 79, 80; Sirey’s Rep. 19, 2, 140; Traité des Personnes par Prudhon, Ch. 5, Sec. 1.
*1058 The same principle is affirmed in Bisland vs. Provosty, 14 An. 169, in the following statement, viz.:
“Under our Art. 2412, which is confined exclusively to the contracts of married women, it is supposed that the wife may be induced to sign a contract injurious to her rights under the marital influence.”
It has been frequently held that a promise to pay a debt of the husband for which the wife had become security, made by the surviving widow subsequently to his death, was binding on the latter. Succession of Guidry, 4 An. 488; Gunst vs. Brull, 7 An. 649.
In Medart vs. Fasnatch, 15 An. 621, it was said of a married woman’s contract of suretyship for her husband, on which a judgment had been rendered, that “as long as the disability lasts a judgment obtained against the man and wife * * * is liable to the same objection as the obnoxious obligation.”
In Barron vs. Sollibellas, 26 An. 289, it was held to be competent for a married woman to make a transaction and compromise of a lawsuit, and that she cannot afterward “ be listened to when saying that the debt on which she was sued was a debt of her husband.” Thornhill vs. Bank, 34 An. 1171; Sentell vs. Stark, 37 An. 679; Calhoun vs. Lane, 39 An. 594.
In the Bank of Lafayette vs. Bruff, 33 An. 624, it was held that a married woman, who has bound herself towards an innocent third person as surety of a party between whom and her husband there existed a secret partnership, can not afterward plead, as against such third person, that by her contract she had promised to pay her husband’s debt.
That principle was subsequently affirmed in Chaffe & Sons vs. Watts, 37 An. 324.
And in treating of the wife’s prohibited contract of security for her husband this court expressly declared in Chaffe vs. Oliver, 34 An. 1008, that:
“ Of course, these doctrines have their limitations when they involve the rights of innocent third persons, who have acted in good faith upon the apparent validity of such transactions.”
And one of those limitations is specified in Henry vs. Gauthreaux, 32 An. 1103, in these words:
“While the law and the jurisprudence have, at all times, favored married women in the assertion and vindication of their rights, they *1059 have never intended, and do not contemplate, the perpetration of fraudulent practices for the accomplishment of villainous objects, by which to enrich themselves gratuitously at the expense of their unguarded and trusting neighbor, on whom equity keeps a watchful eye.” R. O. O. 1965.
These various illustrations will serve to show most conclusively, I think, that the prohibition contained in R. O. O. 2398 (2412) against which the present suit is leveled, does not apply to, and is not founded upon public order or good morals; but that article is only a personal statute, founded exclusively upon the personal relations between husband and wife, and resulting from marriage under our law. That it establishes an incapacity to contract, which, though absolute in a certain sense, and so long as the marital influence continues, is, like the incapacity of a minor, voidable only, and may be the subject of ratification, whether express or implied, after marital influence has ceased.
This being the character of the nullity which this article denounces, the reprobated contract is prescriptible, especiJ^ in respect to third persons who have transacted and dealt with the property affected by it on the faith of the public records on which the contract has remained unimpeached during a prescriptible period of time.
In Vaughan vs. Christine, 3 An. 328, the court held the prescription of five years under R. C. C. 3042 (3507) applicable to such a nullity, as the one in this case is defined to be. The substance of that decision is: That absolute nullities are of two kinds: (1) Those resulting from stipulations derogorating from the force of laws made for the preservation of public order or good morals, (2) and those established for the interest of individuals. “ The former are not susceptible of ratification, and the prescriprion of five years, under Art. 3507 of the Code, is inapplicable to them; but if, by subsequent dispositions of law or by the succession of time, such stipulations cease to be illegal, they may from that time be ratified and become subject to the prescription of Art. 3507 * * * But in relation to absolute nullities established in the interest of individuals, the rule is, as to onerous contracts, without exception, that the party in whose favor they are established, may ratify the contracts, either expressly or impliedly.
“ In all cases of executed contracts susceptible of tacit ratification, *1060 a presumption of ratification juris et de jure results from silence and inaction during the time fixed for prescription.'" (My italics.)
In Succession of Wilder, 22 An. 219, it was held that a voidable antenuptial contract of a minor was binding on her, if not disaffirmed by her within five years after she was relieved of her disability; and the court applied the prescription of five years under R. C. C. 3542 (3507).
But we find the strength of the rule stated contra in Provost vs. Provost, 13 An. 574, wherein the prescription of five years, under that article, was held not to apply to a will that was absolutely void, because it contained a prohibited substitution. Lagrange vs. Barre, 11 R. 313, to same effect.
In so far as the contention that the prescription of ten years, under R. C. C. 2221 is alone applicable, is concerned, it was ruled differently in Mulford vs. Wimbish, 2 An. 443. In that case the court had under consideration and construed the apparently conflicting provisions of R. C. C. 2221 (2218) and 3542 (3507) and said:
The former “ re^es to cases of error, fraud or violence in agreements which are expressly included in it. If Art. 3507 intended the same class of cases, there would be two terms of prescription applicable to them by the same legislation in the same code, etc. * * * But we do not give such an interpretation to Art. 3507. We consider it applicable only to cases other than those provided by Art. 2218, and thus give effect to both articles. It will be observed that such appears to be the evident sense of Art. 2218, which presupposes other provisions concerning the prescription against the action of nullity and rescission of agreements than that which it establishes.”
In George vs. Lewis, 11 An. 654, the court said:
“ The action of rescission or nullity of contracts lies only for an alleged vice inherent to the contract itself, tainting it ab initio, ” in order to bring it within the operation of C. C. 3507. Barnebe vs. Snaer, 18 An. 148.
While, on the contrary, the nullity resulting from a want of due form is barred by the prescription of ten years. State vs. Martin, 2 An. 715; Calais vs. Sembre, 10 An. 684; Ross vs. Ross, 3 An. 536.
From all of which I think it clearly results that the plaintiff’s suit is prescribed by five years, and that the judgment appealed from should be affirmed.